STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. DAVID
GLOVER, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted November 21, 1988—Decided December 22, 1988.

334

Before Judges PETRELLA, SHEBELL and LANDAU.

*Lofton, Wolfe & Brechner,* attorneys for appellant (*Oliver Lofton,* of counsel and on the brief).

*W. Cary Edwards,* Attorney General, attorney for respondent (*Robin Parker,* Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

SHEBELL, J.A.D.

Defendant David Glover appeals his jury convictions for murder (*N.J.S.A.* 2C:11–3a(1) and (2)); possession of a firearm without a permit (*N.J.S.A.* 2C:39–5c), which was merged into the murder conviction, and aggravated arson (*N.J.S.A.* 2C:17–1a). Defendant also appeals his sentence of life imprisonment with 30 years of parole ineligibility imposed for the murder and the concurrent 7–year term imposed for the aggravated arson.

Defendant, in his appeal, alleges the following:

POINT I: THE TRIAL COURT'S FAILURE TO INSTRUCT THE JURY ON THE DIMINISHED CAPACITY DEFENSE OF *N.J.S.A.* 2C:4–2, SUA SPONTE, DENIED DEFENDANT HIS DUE PROCESS RIGHT TO A FAIR TRIAL AND HIS CONSTITUTIONAL RIGHT TO PRESENT A DEFENSE (NOT RAISED BELOW).

POINT II: THE TRIAL COURT'S FAILURE TO CHARGE THE LESSER INCLUDED HOMICIDES OF AGGRAVATED MANSLAUGHTER AND RECKLESS MANSLAUGHTER, SUA SPONTE, DENIED DEFENDANT HIS DUE PROCESS RIGHT TO A FAIR TRIAL (NOT RAISED BELOW).

POINT III: DEFENDANT WAS DEPRIVED OF CONSTITUTIONALLY ADEQUATE REPRESENTATION BY COUNSEL IN VIOLATION OF BOTH THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, PARAGRAPH 10, OF THE NEW JERSEY CONSTITUTION (NOT RAISED BELOW).

POINT IV: DEFENDANT'S CONFESSION WAS INVOLUNTARY AND SHOULD HAVE BEEN SUPPRESSED BY THE TRIAL COURT.

POINT V: THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ADMITTING GRUESOME AND INFLAMMATORY PHOTOGRAPHS OF THE DECEASED INTO EVIDENCE.

POINT VI: THE TRIAL JUDGE ERRED IN FAILING TO TAKE APPROPRIATE ACTION WITH RESPECT TO A SLEEPING JUROR.

POINT VII: THE TRIAL JUDGE ERRED IN RULING A SEVEN YEAR OLD WITNESS COMPETENT TO TESTIFY.

POINT VIII: THE TRIAL COURT ERRED IN FAILING TO DECLARE A MISTRIAL, *SUA SPONTE*, AS A RESULT OF THE WITNESS' EMOTIONAL OUTBURST. (NOT RAISED BELOW).

POINT IX: THE PROSECUTOR'S SUMMATION WAS IMPROPER AND VIOLATED DEFENDANT'S RIGHT TO A FAIR TRIAL. (NOT RAISED BELOW).

POINT X: ASSUMING *ARGUENDO* THAT THE INDIVIDUAL ERRORS DO NOT CONSTITUTE REVERSIBLE ERROR, THE ERRORS AGGREGATELY DENIED DEFENDANT A FAIR TRIAL.

POINT XI: THE SENTENCE IMPOSED BY THE TRIAL COURT IS MANIFESTLY EXCESSIVE.

The facts surrounding this tragic crime are of little dispute. Defendant at approximately 1 a.m., on October 30, 1986, poured gasoline on to the back porch and side entrance of the home of his next-door neighbors and set the building ablaze. As the family exited their burning home, defendant fired two blasts from his shotgun and killed the head of the household. Defendant then threw the shotgun into his car which was parked in the common driveway between the two houses. Upon hearing sirens approaching, he entered his car and drove away.

Defendant was arrested within a short time as he spoke from a telephone booth on the New Jersey Turnpike. Defendant was later turned over to the East Orange Police Department which had jurisdiction over the investigation. He confessed to the police that he set the fire and shot his neighbor, asserting he did it because the victim terrorized defendant's two children.

Everyone but defendant acknowledges that the victim did not terrorize the children. Defendant later expressed the belief that the neighbor sexually abused the children. The defendant's ideations that the neighbor terrorized the children were concededly the result of his mental illness which was diagnosed as paranoid schizophrenia. Defendant had been treated for

many years for this condition. Defendant pursued only an insanity defense, which was rejected by the jury.

## I.

Defendant on appeal alleges that the trial court committed plain error when it failed *sua sponte* to instruct the jury on the defense of diminished capacity under *N.J.S.A.* 2C:4–2. He urges that "[t]he entire thrust of defendant's defense to all of the charges was that he was either not guilty by reason of insanity or lacked the state of mind required for 'purposeful' or 'knowing' conduct due to his diminished capacity resulting from a mental disease."

It was not disputed at trial that defendant had carried out the murder and arson knowingly and purposely. Our very careful review of the record fails to demonstrate any indication that the evidence or arguments of counsel tended to show that defendant sought to demonstrate that he lacked the state of mind required for purposeful or knowing conduct in the commission of the crimes charged. Indeed, his own expert clearly stated, "[h]e knew what he was doing. He went down to Florida, he planned this whole thing out...." Again, on cross-examination, the expert stated, "[h]e plotted this whole thing, he knew what he was doing." Even in his insanity defense under *N.J.S.A.* 2C:4–1, defendant only attempted to demonstrate that he did not know right from wrong. There was no evidence that the disease of the mind from which he suffered caused him "not to know the nature and quality of the act he was doing." *N.J.S.A.* 2C:4–1.

*N.J.S.A.* 2C:4–2, entitled "Evidence of Mental Disease or Defect Admissible When Relevant to Element of the Offense," provides:

Evidence that the defendant suffered from a mental disease or defect is admissible whenever it is relevant to prove that the defendant did not have a state of mind which is an element of the offense. In the absence of such evidence, it may be presumed that the defendant had no mental disease or

defect which would negate a state of mind which is an element of the offense. Mental disease or defect is an affirmative defense which must be proved by a preponderance of the evidence.

Defendant urges that "although defense counsel neither requested that the diminished capacity defense be charged nor objected to its omission, this court should not hesitate to invoke the plain error rule. *R.* 2:10–2." He asserts, "[t]here can be no question that the facts in the present case supported a jury charge on diminished capacity," citing *State v. Breakiron*, 108 *N.J.* 591 (1987). It is clear under *Breakiron*, however, that a diminished capacity charge may be given to the jury only "when competent reliable evidence has been offered." *Id.* at 617. Indeed the statute itself provides that in the absence of relevant evidence it is to "be presumed that the defendant had no mental disease or defect which would negate a state of mind which is an element of the offense." *N.J.S.A.* 2C:4–2.

We agree fully with defendant's contention that there was overwhelming evidence presented at the trial concerning his long-standing mental illness and his violent conduct which on several occasions led to his confinement for psychiatric care. Defendant appears to reason that because when he was under treatment and taking medication he did not act anti-socially, but when he discontinued medication and therapy he became assaultive and abusive, this constitutes evidence sufficient to warrant a diminished capacity charge. We disagree.

Under *N.J.S.A.* 2C:4–2 there must be evidence that the defendant suffered from a mental disease which prevented him from having "a state of mind which is an element of the offense." It is clear under *Breakiron* that the defense of diminished capacity does not serve as a justification or excuse for the commission of a crime, rather it is a factor bearing on the presence or absence of an essential element of the crime. 108 *N.J.* at 608. Defendant's arguments with respect to what the evidence shows is, at best, the offering of an excuse for his

actions and does not to any extent serve to establish that there is the absence of an essential element of his crimes.

We are not here dealing with a situation where the trial court denied the defendant the opportunity to present all relevant evidence on the issue of diminished capacity. Defendant had every opportunity to present such evidence if it were available. None was offered, and we have not been directed to any evidence that defendant lacked the ability to have formed the requisite criminal knowledge, purpose or intent. Therefore, there was no error in the court's failure to charge the defense of diminished capacity. *See State v. Moore*, 113 *N.J.* 239, 280–88 (1988).

The trial judge, prior to his charge to the jury, met with counsel and outlined the substance of his charge. Both counsel were completely satisfied with the judge's proposed charge. Likewise, following the giving of that charge to the jury, defense counsel had no exceptions to the jury instructions. The record demonstrates that all participants in the trial had a clear understanding of what the sole critical issue presented to the jury was, namely, whether defendant knew that the criminal acts that he was carrying out were wrong.

II.

Similarly, defendant on appeal alleges that the trial court's failure to charge aggravated manslaughter and reckless manslaughter *sua sponte* denied him his due process right to a fair trial. The facts presented cannot support a rational conclusion that defendant acted recklessly in causing the death of his neighbor as it is clear that it was defendant's conscious purpose to bring about that death. *N.J.S.A.* 2C:2–2b(1), (3). Defendant posits that "firing the shotgun at the victim could very likely have been an attempt to scare [the victim], rather than kill him" and that "[d]efendant's subsequent statements, albeit delusional, that [the victim] was not dead reveal no purposeful intent to

kill ... but at most, demonstrate a state of mind of reckless-
ness."

It is clear that defendant acted with deliberation and purpose
in carrying out the knowing murder of his neighbor. He
brought his shotgun back from Florida where it had been left in
his brother's house and en route attempted to buy gasoline in a
container before arriving home. Having been unsuccessful in
purchasing the gasoline, he siphoned gasoline from his vehicle
when he arrived home. Defendant used this gasoline to set his
neighbor's house on fire so that his neighbor would be forced
out of the house where defendant lay in wait. Defendant then
fired two shots at such close range that the shots forced the
neighbor's intestines from his body. Facing such a scenario, it
is obvious why no one involved in the trial envisioned any
possibility that defendant's acts were anything less than a
purposeful and knowing murder. *See State v. Rose,* 112 *N.J.*
454, 479–85 (1988). The facts will not support the conclusion
that defendant acted recklessly.

Defendant does not argue that the facts are sufficient to
support a conviction for voluntary manslaughter under *N.J.S.A.*
2C:11–4b(2), which transforms murder to manslaughter when
the homicide "is committed in the heat of passion resulting
from a reasonable provocation." Again, this is no oversight.
The facts are clear that there was no "reasonable provocation"
as required under *N.J.S.A.* 2C:11–4b(2).

## III.

There is no merit to defendant's assertion that he was de-
prived of constitutionally adequate representation by counsel in
violation of both our state and federal constitutional guaran-
tees, by reason of counsel's failure to request a jury charge on
the diminished capacity defense or the lesser-included offenses
of aggravated manslaughter and reckless manslaughter or to
object to their omission from the jury instructions. If such
objections had been made, the result would have been no

different and it cannot be said that the trial "cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 *U.S.* 668, 686, 104 *S.Ct.* 2052, 2064, 80 *L.Ed.*2d 674 reh'g den. 467 *U.S.* 1267, 104 *S.Ct.* 3562, 82 *L.Ed.*2d 864 (1984).

## IV.

■ Defendant next argues that his confession was involuntary and should have been suppressed by the trial court. Defendant maintains that his mental state "vitiated his ability to make a valid waiver of his rights" and that his confession "was not the product of a rational intellect and a free will but was, rather, occasioned by his mental illness."

The evidence is to the contrary. Defendant when apprehended acted and appeared normal. He acknowledged that he understood his rights and was willing to waive them. Although the trial judge indicated that defendant's lack of concern was "not how a rational person would act," there is no evidence that defendant was not rational or acting in an intelligent manner or that he was unable to exercise his free will in waiving his rights and confessing to his crimes. Contrary to defendant's contentions, the record clearly demonstrates that defendant's ability to make free and rational choices when interrogated by the police was not "overborne by defendant's severe mental illness." Defendant was given all of his *Miranda* rights numerous times in detail and acknowledged each time that he understood those rights. Further, he was able to state in detail what he desired, including his specific requests for certain food and drink.

## V.

Defendant asserts that the photographs of the decedent which were introduced in evidence were gruesome and inflammatory and prejudiced his right to a fair trial. We find no abuse of discretion.

■■   Photographs which tend to be inflammatory may not be admitted unless they are shown to have probative value and logical relevance which outweighs their prejudicial nature. *State v. Smith*, 32 *N.J.* 501, 525 (1960), *cert.* den. 364 *U.S.* 936, 81 *S. Ct.* 383, 5 *L.Ed.*2d 367 (1961).   Here, as we have alluded to previously, it was incumbent upon the State to prove that it was defendant's intention to bring about the death of his neighbor. The severity and intensity of the attack as depicted in the photographs was relevant and probative on that issue.   The jury was entitled to have the benefit of this evidence so that it could be graphically aware of the lethal nature of the weapon which defendant used at close range.   This is particularly true as defendant, being the owner of the weapon, had to be aware of the gun's potential for harm.

## VI.

■   Defendant attempts to make much of the fact that the trial judge did not "take appropriate action with respect to a sleeping juror."   The court took the opportunity to advise all of the jurors that they were to remain alert during the court proceedings. While the judge himself was aware prior to it being called to his attention that a certain juror had his eyes closed, the judge did not appear to be of the opinion that the juror had been sleeping.

Of greater importance on the issue is the fact that the question concerning the juror's attentiveness came at a point in the trial where there was no critical evidence being presented. The testimony that was being received at the time was merely of a mechanical nature concerning the presence of an accelerant that was used to start the fire.   This testimony by a member of the East Orange Fire Department was not in any way critical to defendant's defense, but rather, was foundation testimony offered by the State and was itself cumulative.   Any error in failing to pursue an inquiry as to whether the juror had in fact dozed-off was clearly harmless beyond a reasonable doubt.

We have carefully considered defendant's contentions as set forth in Points VII, VIII, IX and X of his brief and find them to be clearly without merit. *R.* 2:11-3(e)(2).

Lastly, defendant urges that the sentence imposed by the trial court is manifestly excessive. Defendant was sentenced to an aggregate term of life imprisonment with 30 years of parole ineligibility. Defendant was 43 years of age at the time of his sentence; thus it is likely that defendant will remain in prison for the remainder of his life. It is defendant's contention that the mitigating factors outweigh the aggravating factors, and neither society nor the defendant will be served by exposing him to this type of sentence. We disagree.

As found by the trial judge, the crime was truly heinous and vicious. It came following several previous violent acts of the defendant upon his family members, including his wife and brother. But for the family relationships, it is clear that the mitigating factor of defendant having no previous criminal record would not be present. Therefore, little weight can be given to the lack of formal convictions when considering defendant's danger to society. The lay and expert evidence clearly shows that defendant will continue to constitute a threat to society.

In short, the evidence supports very strongly the findings of the sentencing judge, and his application of the sentencing guidelines was entirely proper. Further, the sentence does not shock the judicial conscience but rather reflects a sentence which is particularly fitting to both the crimes and the defendant. *State v. Roth*, 95 *N.J.* 334, 364-65 (1984). In any event, under *N.J.S.A.* 2C:11-3b, regardless of whether or not a life sentence was imposed, a 30-year period of parole ineligibility was mandatory.

AFFIRMED.