SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State of New Jersey v. Khalid Mohammed** (A-70-14) (075901)

**Argued April 11, 2016 -- Decided July 25, 2016**

**SOLOMON, J., writing for a unanimous Court.**

In this appeal, the Court considers the proper procedures a trial court should follow when faced with an allegation that a juror was inattentive during part of the trial.

Following a bar fight and an altercation with police in Asbury Park, defendant was charged with third-degree aggravated assault upon a police officer and resisting arrest. The case proceeded to trial. After issuing lengthy pretrial instructions, the prosecutor informed the court that Juror 14 appeared to be sleeping during the instructions. The judge stated that the instructions would be repeated and the parties would return to the issue the following week. When the parties returned to court, there was no further discussion about the allegedly sleeping juror. The judge also did not repeat his preliminary instructions in their entirety, although he provided a summary at the conclusion of each day of trial.

Prior to deliberations, the judge instructed the jury in four parts, with the first three parts presented in the morning and the fourth part presented after lunch. After the fourth part, defense counsel informed the judge that she noticed Juror 14 sleeping during a substantive portion of the charge. The judge explained that he had observed that the juror had his eyes closed off and on during the trial, but he seemed to be paying attention. Noting that some people pay better attention with their eyes closed, the judge found that the juror could continue. Defense counsel made no further statement or request.

Defendant was found guilty of the lesser-included offense of simple assault and resisting arrest by use or threat of physical force. He moved for a new trial, in part because Juror 14 was sleeping during the final charge. During argument on the motion, defense counsel asserted that she heard audible snoring. The judge noted that counsel never asked that Juror 14 be questioned or that an alternate be put in his place. Moreover, the judge disputed counsel's assertion that the juror was snoring, reiterating that some people concentrate better with their eyes closed. Based on his experience and observations, the judge determined that the juror was not inattentive, and further noted that, during deliberations, the jury was provided with a written copy of the charge.

Defendant appealed. The Appellate Division affirmed, pointing to the judge's specific findings and counsel's failure to make a request to replace Juror 14. However, the panel noted that it would have been prudent for the parties to have requested, and the judge to have agreed, to question the juror. The panel rejected the judge's suggestion that giving the jurors copies of the jury instructions for reference during deliberations could cure a juror's inattention during the charge. The Court granted defendant's petition for certification. 222 N.J. 311 (2015).

**HELD:** If Juror 14 was inattentive, it was only during inconsequential pretrial instructions and was neither prejudicial nor clearly capable of producing an unjust result. Because the trial court's finding that Juror 14 was attentive during the jury charge, which is a consequential portion of the trial, was adequately supported by the judge's personal observations, no further inquiry was required.

1. Defendants have a constitutional right to an impartial and mentally competent tribunal. Jury irregularity, including sleeping, may violate this right if it results in prejudice. There is little New Jersey case law addressing the ramifications of sleeping jurors, but the Appellate Division has held that a court must investigate allegations that a juror has been sleeping. However, the Appellate Division has suggested, and a federal court of appeals has held, that if the judge personally observes that the juror is awake, a voir dire is unnecessary. If, on the other hand, a court finds that the irregularity of a sleeping juror may exist, the next step is to determine whether the juror's inattention was prejudicial to the defendant and, therefore, capable of producing an unjust result. To that end, the Appellate Division has found that the important question is when the juror was inattentive, asking not just whether inattentiveness occurred, but whether it occurred during a critical portion of the trial. Once a judge determines,

1

based on his observations and individual voir dire of the juror, that the juror was sleeping, the Appellate Division has instructed that remedial action is required. (pp. 14-17)

2. The Court first determines if defendant waived the issue of whether he was denied his right to be tried by competent jurors. Although defendant failed to identify the allegedly substantive portion of the final charge the juror may have missed, he objected immediately after the charge ended. While defendant did not renew the objection until after the jury returned the verdict, there is no basis to conclude that this was premeditated or strategic. Thus, defendant did not waive the issue, and the Court reviews it for harmful error, asking if any error was clearly capable of producing an unjust result. (pp. 18-19)

3. The first allegation that Juror 14 was inattentive arose during pretrial instructions, which neither party argues was a consequential part of the trial. Although individual voir dire of Juror 14 would have been appropriate, the Court concludes that, on this record, a juror sleeping during the time and circumstances alleged could not have prejudiced defendant, did not deprive him of his right to mentally competent jurors, and was not clearly capable of producing an unjust result. The second allegation involved the final jury charge. Based upon his own observations, the judge found that the juror was awake during the charge. This conclusion, based upon personal observations explained adequately on the record, ends the inquiry as to the second allegation. If Juror 14 was inattentive, it was only during inconsequential pretrial instructions, not during important testimony or instructions on the law. (pp. 19-22)

4. The Court rejects the trial judge's suggestion that the written instructions option in Rule 1:8-8 might cure a deficiency in the oral instructions. Should a court find that a juror was not alert during the final charge, which is a consequential part of the trial, written instructions alone are insufficient to cure the inattention and resulting prejudice. (pp. 22)

5. In sum, the Court holds going forward that the trial court and counsel have a duty to be certain that a defendant's trial is heard by an alert and attentive jury. Where the trial judge notices that a juror is inattentive, the judge will have broad discretion to determine the appropriate level of investigation and corrective action required. Where a party alleges that a juror is inattentive, the judge should adequately explain on the record any personal observations regarding the juror's attentiveness. A finding of attentiveness based on these personal observations generally ends the inquiry and will be reviewed to determine whether the finding is adequately supported in the record. If a judge does not personally observe a juror's attentiveness, the judge should conduct an individual voir dire of the juror. If, following voir dire, a determination is made that the juror was inattentive during an inconsequential part of the trial, the judge will have broad discretion to determine the appropriate corrective action. A finding that the pertinent portion of the trial was inconsequential will be reviewed for harmful error. On the other hand, if a determination is made that the juror was inattentive during a consequential part of the trial, the judge must take appropriate corrective action, such as replaying a recording or videotape, rereading a portion of the jury charge, or excusing the juror, among other steps. (pp. 22-24)

The judgment of the Appellate Division is **AFFIRMED**.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, PATTERSON, and FERNANDEZ-VINA; and JUDGE CUFF (temporarily assigned) join in JUSTICE SOLOMON's opinion.**

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

       v.

KHALID MOHAMMED,

    Defendant-Appellant.


        Argued April 11, 2016 – Decided July 25, 2016

        On certification to the Superior Court,
        Appellate Division.

        Stefan Van Jura, Deputy Public Defender II,
        argued the cause for appellant (Joseph E.
        Krakora, Public Defender, attorney; Mr. Van
        Jura, of counsel, Mr. Van Jura and Glenn D.
        Kassman, Designated Counsel, on the briefs).

        Paul H. Heinzel, Special Deputy Attorney
        General/Acting Assistant Prosecutor, argued
        the cause for respondent (Christopher J.
        Gramiccioni, Acting Monmouth County
        Prosecutor, attorney).

        Claudia Joy Demitro, Deputy Attorney
        General, argued the cause for amicus curiae
        Attorney General of New Jersey (Robert
        Lougy, Acting Attorney General, attorney).


    JUSTICE SOLOMON delivered the opinion of the Court.

    In this appeal, we consider, for the first time, the proper

procedures a trial court should follow when faced with an

allegation that a juror was inattentive during part of the

1

trial.  Here, the prosecutor claimed that a juror was sleeping during the judge's pretrial instructions, which neither party identified as a consequential phase of the trial.  The judge did not make a finding with respect to that allegation but said that he would repeat the instructions.[1]  At the end of the trial, without requesting that any action be taken by the judge, defense counsel alleged that the same juror was sleeping during an unidentified part of the judge's final charge.  The judge found, based upon personal observations, that the juror was awake during the final charge and, therefore, took no action.

After the jury convicted defendant of simple assault and resisting arrest, defendant moved for a new trial claiming that the juror's inattention could have affected the outcome.  The trial court denied the motion for a new trial, and the Appellate Division affirmed.

We affirm the Appellate Division.  We also provide guidance in this area that, going forward: When it is alleged that a juror was inattentive during a consequential part of the trial, if the trial court concludes, based upon personal observations explained adequately on the record, that the juror was alert,

---

[1] The record reflects that the parties did not request and the trial court did not repeat its preliminary instructions in their entirety.  At the end of the trial day, the judge cautioned jurors against investigating, discussing, or communicating with others about the case.

the inquiry ends.  If the judge did not observe the juror's attentiveness, the judge must conduct individual voir dire of the juror; if that voir dire leads to any conclusion other than that the juror was attentive and alert, the judge must take appropriate corrective action.

I.

A.

The discrete issue raised by defendant in this appeal does not warrant a lengthy discussion of the facts surrounding the incident leading to defendant's arrest and conviction.  We provide only a brief summary for context, followed by an account of pertinent portions of the trial and jury charge.

In the early morning hours of April 22, 2010, police officers responded to a call reporting a bar fight in Asbury Park.  As the officers approached the scene, they observed approximately thirty people fighting in front of Syanxis bar, including defendant Khalid Mohammed, his brother, and his brother's fiancée.  When the responding officers attempted to arrest defendant's brother and his fiancée, defendant tried to intervene and had an altercation with James Lao, an officer who had ordered defendant to back away.  During that altercation, defendant pushed, punched, and slammed Officer Lao to the pavement.  The officer sustained a bruised elbow, and defendant suffered a broken ankle.

As a result of that encounter, a Monmouth County Grand Jury indicted defendant on one count of third-degree aggravated assault upon a police officer, N.J.S.A. 2C:12-1(b)(5)(a), and one count of third-degree resisting arrest, N.J.S.A. 2C:29-2(a)(3).

The case proceeded to trial. At the end of jury selection, the trial judge delivered lengthy pretrial instructions that included discussion of the roles of the judge and the jury, basic trial procedure, and the prohibition against discussing or investigating the case outside of the courtroom. After the judge dismissed the jurors, the prosecutor informed the court that Juror 14 appeared to be sleeping during the instructions. The judge responded that he was not certain whether the juror heard the entire instruction but said he would "have no problem in asking him about it." The judge also suggested that the attorneys stand closer to the jurors when addressing them to ensure that the jurors remained alert. The judge added that the instruction the juror may have slept through "will be repeated in any event" and that he is "required to watch the jurors at all times." The discussion ended with the judge stating that he and the parties would return to the issue when they came back to court the following week.

When the parties returned to court, there was no further discussion about the allegedly sleeping juror and the jury was

4

sworn. The judge also did not repeat his preliminary instructions in their entirety. However, at the end of each day of trial, he summarized the preliminary instructions as follows:

> Please remember my instructions. Do not discuss the case with each other. Do not discuss the case with family and friends. Do not have any electronic communication with anyone about any person, place, or thing connected to this particular trial. I do not know whether there will be any media coverage. Do not read anything about it in the media. Do not have anyone seek out on your behalf anything about it in the media about the trial. Do not go and visit the scene of what's been described in testimony. Do not use any sort of electronic means, Mapquest, Google Earth, or the like. You are not to do any sort of investigation. You are not here as investigators.[2]

After the evidence was presented by both parties, the judge instructed the jury in four parts: (1) the general principles of criminal law -- the nature of an indictment, the burden of proof, and the roles of the judge and jury; (2) what is and is not evidence and the difference between direct and circumstantial evidence; (3) the law specific to this case and the crimes alleged; and (4) the rules for jury deliberation. The judge presented the first three parts in the morning and the fourth part following lunch. In the afternoon, after the final jury instruction on rules for jury deliberation, defense counsel

---

[2] The instructions given at the end of each day were not identical but used substantially the same language.

stated, "I just wanted to make a record that I did notice juror number 14 sleeping again during the substantive charge." Counsel did not specify when the juror was purportedly sleeping. The trial judge described his own personal observations of the juror and concluded that the juror could continue.

> He's been having his eyes closed on and off throughout the trial. He's just -- sometimes people -- he goes in and out, but he seems to be paying attention. He opens his eyes. It's not that he's been continuously asleep. Some people close their eyes to pay better attention, especially during my charge. So your observation is noted. It doesn't appear that he's unable to continue to serve.

Defense counsel thanked the court and made no further statement or request.

During deliberations, the jury, which had been provided with a written copy of the charge for reference, submitted several questions that the court answered. Thereafter, on the morning of the second day of deliberations, the jury returned a verdict finding defendant guilty of simple assault, a lesser-included offense of third-degree aggravated assault upon a police officer, N.J.S.A. 2C:12-1(a), and resisting arrest by use or threat of physical force. Defendant moved for a new trial, pursuant to Rule 3:20-1, arguing that a new trial was "required in the interest of justice" because the jury's verdict was

6

internally inconsistent[3] and because Juror 14 was "sleeping" during the time the court gave its final charge to the jury. The court heard oral argument on the motion.

During oral argument, defense counsel stressed that she brought the problem of Juror 14 "dozing off" to the court's attention, stating "it was evident that the juror was not just listening with his eyes closed," and, for the first time, she stated that she heard "very audible snoring." Citing State v. Reevey, 159 N.J. Super. 130 (App. Div.), certif. denied, 79 N.J. 471 (1978), defense counsel argued that the court's failure to "at a minimum, question the juror" was "reversible error."

The judge noted that defendant never asked that Juror 14 be questioned or "an alternate put in [his] place." The judge also disputed defendant's factual account and said that he never heard the juror snoring. The judge stated, as he had previously, that "[s]ome people can actually concentrate better" with their eyes closed, and reasoned as follows:

> The bottom line is the way the seats are constructed, unless you're a thoroughbred race horse, if you fall asleep, you slump down in the chair. If you're in the second row, your head hits the wall or you fall forward . . . . [T]here was no indication, first of all, that there was any snoring and, second, that there was any body posture that was out of the

---

[3] Defense counsel claimed that defendant could not have known that Officer Lao was a police officer for the purpose of the resisting arrest charge and not for the assault charge. The judge rejected this claim, which is not part of this appeal.

ordinary other than closed eyes.

Relying upon his experience and observations, the judge determined that the juror was not inattentive.  As further support for his decision to deny a new trial, the judge "note[d] that the jurors were provided with a written" copy of the charge during deliberations.

## B.

Defendant appealed, claiming that the trial judge's failure "to conduct an inquiry into . . . whether Juror Number 14 was sleeping during the court's instruction as to the substantive law requires a reversal of defendant's convictions or, in the alternative, a remand for an evidentiary hearing."  Citing State v. R.D., 169 N.J. 551, 559 (2001), the Appellate Division applied an abuse of discretion standard and affirmed the trial court.  It noted, however, that it would have been "prudent" for the parties to have requested, and the judge to have agreed, to question the juror.  The panel, citing Panko v. Flintkote Co., 7 N.J. 55, 61 (1951), observed that the trial judge, defense counsel, and the State had a responsibility to "ensure that the trial was fair and the jurors had the mental and physical capabilities to assess the evidence and apply the legal principles as instructed by the court."

The panel distinguished this case from Reevey, supra, because the judge here made specific findings and counsel failed

8

to make a request to replace Juror 14.  The panel concluded that this case more closely resembled State v. Scherzer, 301 N.J. Super. 363 (App. Div.), certif. denied, 151 N.J. 466 (1997), where the court suggested remedies for the problem of a sleeping juror and "defense counsel requested that nothing be done."

The panel further rejected the trial judge's suggestion that giving the jurors copies of the jury instructions for reference during deliberations could cure a juror's inattention during the jury charge.  It held that although Rule 1:8-8(b)(2) directs trial judges to strive to make legal instructions available to the jury during deliberations, the copies distributed under the Rule are not, according to the panel, a substitute for oral instructions.

We granted defendant's petition for certification.  State v. Mohammed, 222 N.J. 311 (2015).

## II.

Defendant frames the trial court's failure to voir dire the allegedly sleeping juror as a due process violation -- denying his "right to be tried by competent jurors," which "'implies a tribunal both impartial and mentally competent to afford a hearing.'"  Tanner v. United States, 483 U.S. 107, 134, 107 S. Ct. 2739, 2754-55, 97 L. Ed. 2d 90, 115 (1987) (Marshall, J., dissenting) (quoting Jordan v. Massachusetts, 225 U.S. 167, 176,

32 S. Ct. 651, 652, 56 L. Ed. 1038, 1042 (1912)).[4]  Defendant claims that the failure of the trial court to question Juror 14 deprived defendant of his guaranteed right to "mentally competent" jurors and, therefore, amounted to an abuse of discretion.

Defendant bases his argument on the following observations: (1) counsel informed the court twice that Juror 14 was sleeping; (2) there is evidence the juror slept through the judge's instructions; (3) the judge found the juror was awake, even though he made contrary observations; and (4) the judge failed to voir dire the juror.  Defendant therefore contends that the judge's finding that the juror was awake is not supported by the record, and that allowing the juror to participate in deliberations was prejudicial.

Defendant relies primarily on two cases -- Reevey, supra, 159 N.J. Super. at 134, and State v. Burks, 208 N.J. Super. 595, 611-12 (App. Div. 1986) -- in which the Appellate Division held that the trial court should determine whether a juror was inattentive and, if so, consider proper corrective measures.  First, defendant argues that Reevey, supra, held that the trial court had the authority to remove a sleeping juror and,

_____

[4] The majority opinion in Tanner cites the same language from Jordan.  See Tanner, 483 U.S. 126, 107 S. Ct. at 2751, 97 L. Ed. 2d at 110.

10

therefore, should have conducted a hearing to determine whether the juror was actually asleep. 159 N.J. Super. at 134. Second, defendant argues that, in Burks, supra, 208 N.J. Super. at 612, the Appellate Division noted that "the judge should have ascertained if the jurors were sleeping and if so considered proper corrective measures." Defendant contends that his case is "strikingly similar" to Reevey because the judge here did not conduct a hearing but instead determined that the juror was not sleeping based on the judge's own "cursory observations."

Defendant also argues that the court was wrong to suggest that, even if a juror had slept during the final charge, giving the jury a written copy of the charge could cure that defect. Relying on State v. Lindsey, 245 N.J. Super. 466, 474 (App. Div. 1991), defendant contends that it is inappropriate to allow jurors to rely on the written instructions because there is no guarantee they will be read by jurors in the "objective fashion" the judge would use and because the defendant and his lawyer would not be present to object to errors in a jury-room reading.[5]

---

[5] In his supplemental brief, defendant also raises an ineffective assistance of counsel claim. Specifically, defendant alleges that, if this Court finds that his counsel was required to ask for a specific remedy, the failure to do so constitutes ineffective assistance. We decline to address that argument because it is better suited for review on post-conviction relief and not direct appeal. See State v. Hess, 207 N.J. 123, 145 (2011); State v. Preciose, 129 N.J. 451, 460 (1992); State v. Dixon, 125 N.J. 223, 262 (1991).

11

The State acknowledges that, under Reevey, supra, "[w]hen it appears that a juror may have been sleeping, the trial judge should determine whether a juror has been sleeping, and if so, take corrective action." 159 N.J. Super. at 133-34. However, the State asserts that defendant bears the burden of demonstrating a juror was sleeping, missed important parts of the trial, and there was resultant prejudice.

The State argues that this case is more like State v. Glover, 230 N.J. Super. 333, 343 (App. Div. 1988), certif. denied, 121 N.J. 621 (1990), than Reevey and Burks. The State contends that, as in Glover, the trial judge here addressed defendant's concern about the juror and made a factual finding based on his own observations. The court did not summarily dismiss defendant's claim, as the trial judges did in Reevey and Burks. The State also asserts that even when a juror is found by the court to be sleeping, the judge can decline to order a new trial if the defendant does not ask for curative measures or if the juror was sleeping during an inconsequential part of the trial. Moreover, defendant in this case failed to point to a specific part of the jury charge that the juror allegedly slept through and, because "defendant cannot demonstrate that he was in any way prejudiced," this Court should not grant relief.

The State further claims that defendant waived his right to inquiry and corrective action because defense counsel did not

12

object to the way the trial court handled the accusation that a juror was sleeping. The State compares defense counsel's inaction in this case to the defense attorney in Scherzer, supra, 301 N.J. Super. at 491, who "requested that nothing be done."

Lastly, the State argues that "[w]hile it may be that a written charge is not necessarily a 'cure' to the issue, it most certainly is relevant to a reviewing court's assessment of the issue" because it "undermines the notion . . . that it was impossible for the juror to deliberate." The State distinguishes Lindsey, supra, 245 N.J. Super. at 474, because in that case the jury instructions were "totally inadequate," but here defendant has not challenged the instructions themselves.

Amicus Curiae, the Office of the Attorney General (AG), expands upon the arguments the State raises. While the AG also acknowledges Appellate Division precedent that requires trial judges to "take 'action' when counsel alerts them to sleeping jurors," it notes that this Court has not spoken on what action trial courts should take and urges the Court to give trial judges the responsibility to investigate charges of juror misconduct along with the discretion to determine how to investigate and whether the misconduct will prejudice the defendant. Moreover, the AG emphasizes, once a jury has rendered a verdict, the defendant should bear a heavy burden to

13

reverse it -- showing both that the juror was sleeping and that the defendant suffered prejudice as a result.

Finally, the AG asserts that once defense counsel tells the trial court that a juror was sleeping and the court finds the juror was not, defendant's failure to ask for further action waives the issue. See Rule 1:7-2 (requiring, for issue to be preserved for appeal, that a party "make known to the court specifically the action which the party desires the court to take or the party's objection to the action taken and the grounds therefor").

## III.

### A.

Under the United States Constitution, defendants have a due process right to an "impartial and mentally competent" tribunal. Jordan, supra, 225 U.S. at 176, 32 S. Ct. at 652, 56 L. Ed. at 1042 (citing U.S. Const. amend. XIV); see also Tanner, supra, 483 U.S. at 126-27, 107 S. Ct. at 2751, 97 L. Ed. 2d at 110-11 (citing quoted language from Jordan, but holding that evidence of intoxicated and sleeping jurors, discovered post-verdict, did not entitle defendant to an evidentiary hearing). Jury "irregularity," including sleeping, may violate a defendant's federal and state constitutional rights to a fair tribunal if it results in prejudice. Scherzer, supra, 301 N.J. Super. at 486-87 (citing U.S. Const. amend. XI; N.J. Const. art. I, ¶10).

14

There is little New Jersey case law dealing with the ramifications of jurors determined to have slept through part of a trial.  However, the Appellate Division has held that, when a party alleges that a juror has been sleeping, a court must investigate that allegation.  Reevey, supra, 159 N.J. Super. at 133-34; Burks, supra, 208 N.J. Super. at 611-12.  In Reevey, supra, defense counsel told the trial judge that a juror was sleeping during the summations and jury charge.  159 N.J. Super. at 133.  Defense counsel "suggest[e]d that [the juror] be one of the alternates."  Ibid.  The judge made no finding about whether the juror was sleeping, but instead responded that he could not dismiss that juror because he believed he did not have the authority to do so.  Ibid.  The appellate panel remanded for a hearing to determine whether the juror was, in fact, sleeping.  Id. at 135.  The panel stated that, "at the very least under the circumstances of this case the trial judge should have conducted a hearing and questioned this juror as to whether she was in fact dozing or sleeping, or whether she was listening to the summations and the charges but merely had her eyes closed."  Id. at 134.

In Burks, supra, the Appellate Division reversed on other grounds but, as in Reevey, noted its disapproval of the trial judge's summary dismissal of the defendant's allegations that jurors were sleeping.  208 N.J. Super. at 611-12 ("Certainly the

15

judge should have ascertained if the jurors were sleeping and if so considered proper corrective measures.").

However, the Appellate Division has suggested, and a federal court of appeals has held, that when it is alleged that a juror was asleep and the judge personally observed that the juror was awake, a voir dire need not be conducted. See United States v. Holder, 652 F.2d 449, 451 (5th Cir. 1981) ("We discern no abuse of discretion in the trial court's failure to question the juror who allegedly fell asleep.  The court's remarks demonstrate that the court had observed the juror in question and that it concluded that the juror was not in fact asleep."); Glover, supra, 230 N.J. Super. at 343 (finding other issues "[o]f greater importance," but noting "the judge did not appear to be of the opinion that the juror had been sleeping").

Once a court finds that the "irregularity" of a sleeping juror may exist, the next step is to determine whether the juror's inattention was prejudicial to the defendant and, therefore, capable of producing an unjust result.  Courts in other jurisdictions apply a presumption of prejudice when a juror has slept through an important part of the trial.  See, e.g., People v. Evans, 710 P.2d 1167, 1168 (Colo. App. 1985) (closing argument); Commonwealth v. McGhee, 25 N.E.3d 251, 257 (Mass. 2015) (testimony of material witness); State v. Turner, 521 N.W.2d 148, 151 (Wis. Ct. App. 1994) (same).

16

Similarly, the Appellate Division has found that the question of when the juror was inattentive is more important than whether the juror was inattentive -- "[o]f greater importance on the issue is the fact that the question concerning the juror's attentiveness came at a point in the trial where there was no critical evidence being presented." Glover, supra, 230 N.J. Super. at 343. Additionally, the panel found that the testimony the juror may have missed "was not in any way critical to defendant's defense, but rather, was foundation[al] testimony offered by the State and was itself cumulative." Ibid. The panel held that the failure to inquire further "was clearly harmless beyond a reasonable doubt." Ibid. The Reevey panel did not reach that issue but noted "the requirement in the cases from other jurisdictions of a finding of prejudice." Reevey, supra, 159 N.J. Super. at 134 (citing 88 A.L.R. 2d. 1275 (1963)).

Once a judge concludes, based on his observations and individual voir dire of a juror, that the juror was sleeping, the Appellate Division has instructed that a court must take remedial action. See Burks, supra, 208 N.J. Super. at 612 ("Certainly the judge should have ascertained if the jurors were sleeping and if so considered proper corrective measures.").[6]

---

[6] The panel in Reevey, supra, suggested making the sleeping juror an alternate. 159 N.J. Super. at 134-135 (citing R. 1:8-1(d)).

17

IV.

A.

To resolve this appeal, we must first determine if defendant waived the issue of whether he was denied his "right to be tried by competent jurors."  Tanner, supra, 483 U.S. at 134, 107 S. Ct. at 2754-55, 97 L. Ed. 2d at 115 (Marshall, J., dissenting).  Some constitutional claims may be waived when the defendant decides, for strategic reasons, not to raise the claim at trial.  State v. Williams, 219 N.J. 89, 98 (2014), cert. denied, ___ U.S. ___, 135 S. Ct. 1537, 191 L. Ed. 2d 565 (2015).  In Williams, defense counsel explicitly declined to object when the State offered a forensic pathologist to testify based on another doctor's autopsy report.  Id. at 100.  On appeal, this Court held that the defendant waived his Confrontation Clause argument when he allowed the State to call a substitute witness to testify against him, finding that the defendant made a strategic decision to allow the autopsy report to come in.  Id. at 99-101.  Similarly in Scherzer, supra, the Appellate Division held that when the defendant refused the judge's offer to take curative measures, it was not error for the judge to honor that refusal.  301 N.J. Super. at 491.

Although defendant here identified the portion of the charge the juror might have missed as "substantive," he failed to identify the specific portion of the charge at issue.

18

Nevertheless, unlike the defendants in Williams and Scherzer, this defendant immediately objected after the jury charge ended. While defendant did not renew the objection until after the jury returned the verdict, we find no basis to conclude this was premeditated or strategic, and we hold that defendant did not waive the issue.

When a party preserves an issue for appeal on the record, this Court reviews for harmful error. See State v. Lazo, 209 N.J. 9, 12 (2012); State v. R.B., 183 N.J. 308, 330 (2005); State v. Macon, 57 N.J. 325, 337-38 (1971). "[T]he question for the appellate court [is] simply whether in all the circumstances there [is] a reasonable doubt as to whether the error denied a fair trial and a fair decision on the merits." Macon, supra, 57 N.J. at 338. In such cases, the reviewing court asks whether the error is "clearly capable of producing an unjust result." R. 2:10-2.

### B.

We turn next to the allegations that Juror 14 was sleeping. The first allegation came from the prosecutor after the judge's pretrial instructions to the jury. The judge did not make a factual finding about whether the juror was sleeping, but stated he would repeat the general instructions and would inquire further when the jury returned the following trial day. However, the judge did not repeat the preliminary instructions

in their entirety or conduct a further inquiry, and neither party requested that he do so.

This first allegation that Juror 14 was inattentive came during pretrial instructions, which neither party argues was a consequential part of the trial. Furthermore, as stated previously, the trial judge summarized his preliminary instructions to the jury at the end of each trial day. Although individual voir dire of Juror 14 at this time would have been appropriate, we conclude that, on the record before us, a juror sleeping during the time and circumstances alleged could not have caused any prejudice to defendant, did not deprive defendant of his due process right to "mentally competent" jurors, Jordan, supra, 225 U.S. at 176, 32 S. Ct. at 652, 56 L. Ed. at 1042, and was not clearly "capable of producing an unjust result," R. 2:10-2.

The second allegation that Juror 14 was sleeping was not brought to the attention of the trial court until after the judge completed the final jury charge, which extended over a lunch break. Defense counsel did not specify during which part of the final charge the juror was sleeping; however the allegation was advanced after the fourth part of the final jury charge, regarding the rules for jury deliberation. After this second allegation, the judge made factual findings, based upon his own observations, that the juror was awake. The judge

20

concluded that the juror had "been having his eyes closed on and off throughout the trial . . . but he seems to be paying attention.  He opens his eyes. . . .  It doesn't appear that he's unable to continue to serve."

We conclude that, as to the second allegation that Juror 14 was sleeping at some time during the final jury charge, it was not an abuse of discretion for the judge to rely on his own observations, which he explained on the record, and not make further inquiry.  Indeed, we hold that when the trial court concludes, based upon personal observations explained adequately on the record, that the juror was attentive, the inquiry ends.

A reviewing court must accept the factual findings of a trial court that are "supported by sufficient credible evidence in the record."  State v. Gamble, 218 N.J. 412, 424 (2014) (citing State v. Elders, 192 N.J. 224, 243 (2007)); see also State v. Johnson, 42 N.J. 146, 161 (1964) (stating that deference should be afforded to trial judge's findings when they "are substantially influenced by his [or her] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy").

The trial court's finding here is adequately supported by the judge's personal observations.  Because the trial judge sufficiently supported his factual finding that Juror 14 was attentive during the court's final jury charge, it follows that,

21

if in fact Juror 14 was inattentive, it was only during procedural pretrial instructions, not during important testimony or instructions on the law.

Finally, as did the Appellate Division, we reject the trial judge's suggestion that the written instruction option in Rule 1:8-8 might cure a deficiency in the oral instruction. We hold that should a court find that a juror was not alert during the final charge to the jury -- a consequential part of the trial -- written instructions alone are insufficient to cure the juror's inattention and the resulting prejudice. See Lindsey, supra, 245 N.J. Super. at 473-74 (observing "a strong view" in survey of persuasive authority "that the judge should read all instructions to the jurors, not rely on jurors to read them, or the foreperson to recite them to the jury"). Thus, the copies distributed under the Rule were not a substitute for oral instructions or individual voir dire to determine whether a juror was alert and attentive.

In sum, we hold going forward that the duty belongs to the court, as well as to counsel, to be certain that the defendant's trial is heard by an alert and attentive jury. See Reevey, supra, 159 N.J. Super. at 133-34. Instances of juror inattentiveness at trial will be brought to the court's attention in one of two ways: either the court will personally observe that a juror's attention is diverted or otherwise in

question, or one of the parties will bring the issue to judge's attention.

Where the trial judge notices that a juror is inattentive, the judge will have broad discretion to determine the appropriate level of investigation and corrective action that must be taken. However, when a party alleges that a juror is inattentive, the trial judge should explain adequately on the record the judge's personal observations, if any, regarding the juror's attentiveness. A finding based on the trial court's personal observations that the juror was alert and attentive generally ends the inquiry and will be reviewed to determine whether the finding is adequately supported in the record. If the judge did not personally observe the juror, the judge should conduct an individual voir dire to determine if the juror was inattentive, and make appropriate findings.

If, following voir dire, the trial court concludes that a juror was inattentive during an inconsequential part of the trial, the trial court will have broad discretion to determine the corrective action that must be taken. A finding by the trial court that the pertinent portion of the trial is inconsequential will be reviewed under a "harmful error" standard -- whether the error is "clearly capable of producing an unjust result." R. 2:10-2.

If, following voir dire, the trial court concludes that a juror was inattentive during a consequential part of the trial, the judge must take appropriate corrective action, such as replaying a tape recording or videotape, rereading a portion of the jury charge, or excusing the juror, among other steps.

V.

For the reasons set forth above, the judgment of the Appellate Division is affirmed.

CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, PATTERSON, and FERNANDEZ-VINA; and JUDGE CUFF (temporarily assigned) join in JUSTICE SOLOMON's opinion.

24