**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3630-18

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

EMMANUEL HERNANDEZ,
a/k/a MANNY,

      Defendant-Appellant.

_____

Submitted February 8, 2021 – Decided April 27, 2021

Before Judges Messano and Suter.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 17-05-0282.

Joseph E. Krakora, Public Defender, attorney for appellant (Stefan Van Jura, Assistant Deputy Public Defender, of counsel and on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Ednin D. Martinez, Assistant Prosecutor, on the brief).

PER CURIAM

A jury convicted defendant Emmanuel Hernandez of the lesser-included offenses of second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1), and third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2), as well as second-degree eluding police, N.J.S.A. 2C:29-2(b), third-degree aggravated assault on a law enforcement officer, N.J.S.A. 2C:12-1(b)(5)(a), second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1), and third-degree resisting arrest, N.J.S.A. 2C:29-2(a)(3)(a). The jury acquitted defendant of two counts of first-degree attempted murder, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3, and third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-4(a)(1). The judge sentenced defendant to a seven-year term of imprisonment subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, on the conviction for second-degree aggravated assault; two concurrent five-year terms with forty-two-month periods of parole ineligibility pursuant to the Graves Act, N.J.S.A. 2C:43-6(c), for third-degree aggravated assault and second-degree unlawful possession of a weapon; and concurrent sentences on the remaining convictions.

Defendant raises the following points on appeal:

> POINT I
>
> DEFENDANT WAS DENIED DUE PROCESS AND A FAIR TRIAL BY THE TRIAL COURT'S FAILURE TO VOIR DIRE A JUROR ALLEGED TO BE

2

SLEEPING DURING A CRUCIAL PORTION OF THE TRIAL. (NOT RAISED BELOW) [1]

POINT II

DEFENDANT WAS DENIED A FAIR TRIAL BY THE ADMISSION OF TESTIMONY THAT DRUGS AND MONEY WERE FOUND IN THE SAME LOCATION AS HIS HANDGUN. (NOT RAISED BELOW)

POINT III

THE SEVEN-YEAR NERA SENTENCE SHOULD BE REDUCED TO A FIVE-YEAR NERA SENTENCE.

Considering the record and applicable legal standards, we affirm.

I.

On February 5, 2017, at around 1:45 a.m., a female driver saw a man, whom she later identified as defendant, in a red Infiniti coupe with a Florida license plate holding a handgun and screaming at women crossing the street. Alerted by dispatch, North Bergen patrol officer Robert Garcia spotted a matching vehicle in a QuickChek parking lot. On seeing defendant, Garcia drew his weapon and asked defendant to show his hands. Defendant did not comply, struck Garcia, broke free from his grip, got into his car, and attempted to drive

---

[1] We omitted citations in the point headings to the United States and New Jersey Constitutions.

3

away, causing Garcia to again draw his weapon and strike the windows of defendant's car with his baton. Defendant reversed the car, ran over Garcia's foot, and drove away.

Police pursued defendant as he sped through traffic lights and drove in the wrong traffic lanes. Eventually, defendant parked in front of a residence and ran down a dark alleyway that led to the back of the building. Officers pursued on foot. Upon entering the building, the officers saw muzzle flashes, heard accompanying gunshots, and returned fired. They retreated, set up a secure perimeter, and awaited the arrival of the Special Weapons and Tactics (SWAT) team.

At around 3:20 a.m., the commander of the regional SWAT team took over the scene, cleared the building of other residents, and discovered defendant occupied the basement apartment. The SWAT team was in telephonic communication with defendant, but, when defendant became uncooperative and the conversations fruitless, the SWAT team shot tear gas into the apartment. In addition, robots with video cameras were able to view defendant, who was inside, pacing and holding a long gun, which police later discovered was a shotgun with an extended barrel. Defendant surrendered approximately twelve hours after the SWAT team's arrival.

4

Detective Matthew Kickey of the Hudson County Prosecutor's Office investigated the crime scene and recovered three shell casings near the exterior basement door. They had been fired from defendant's .40 caliber handgun recovered in the apartment. In addition to the handgun, police recovered a shotgun, ammunition, and handgun magazines inside the apartment. Kickey testified that in the bedroom closet he "recovered a firearm . . . some currency and some CDS as well."

The jury heard a recording of defendant's phone conversation with the SWAT team. In it, defendant contended that he had no intention to hurt anyone. At trial, defendant asserted a diminished capacity defense and testified that he suffered from post-traumatic stress disorder (PTSD) caused by various events in his military service and post-military life.

Both the prosecutor and defendant presented expert testimony about defendant's mental state at the time of the incident, and the State's expert opined that defendant, although suffering from PTSD and in an emotional state, could understand his actions and differentiate right from wrong. To the contrary, the defense expert opined that defendant's mental condition dissociated him from reality, with the parking lot incident triggering his behaviors.

During the testimony from the State's expert, before he opined on defendant's mental state, the judge interrupted and asked the jury, if "Juror No. 8, or somebody" needed a break to "keep everybody fresh and awake." Noting that the testimony could be dry, the judge told jurors he would accommodate anyone who needed a break, and that he would allow quick stretching or standing. As the expert continued testifying regarding defendant's background, the prosecutor interrupted, and at sidebar stated, "I have a little while more to go . . . . I wonder if now would be a good time to take a break. There's a juror coughing, somebody's falling asleep." The judge agreed to a break and excused the jury. Defense counsel never objected to the judge's course, nor did he assert that in fact any juror was sleeping during the testimony.

## II.

We review a judge's control of the courtroom and any remedial action taken regarding an inattentive juror under an abuse of discretion standard. State v. Mohammed, 226 N.J. 71, 89 (2016). The Court has suggested judges employ the following procedure:

> Where the trial judge notices that a juror is inattentive, the judge will have broad discretion to determine the appropriate level of investigation and corrective action that must be taken. However, when a party alleges that a juror is inattentive, the trial judge should explain adequately on the record the judge's

6

personal observations, if any, regarding the juror's attentiveness. A finding based on the trial court's personal observations that the juror was alert and attentive generally ends the inquiry and will be reviewed to determine whether the finding is adequately supported in the record. If the judge did not personally observe the juror, the judge should conduct an individual voir dire to determine if the juror was inattentive, and make appropriate findings.

[Ibid.]

In certain cases, a defendant's failure to object to an inattentive juror may very well be a strategic decision that waives the issue of a competent jury. Id. at 86 (citing State v. Williams, 219 N.J. 89, 98 (2014)).

In State v. Scherzer, we found no abuse of discretion "when defense counsel commented about a sleeping juror, the judge made several suggestions as to possible corrective action, but defense counsel requested that nothing be done." 301 N.J. Super. 363, 491 (App. Div. 1997). Here, the prosecutor mentioned that a juror seemed to be falling asleep, but he never said the juror was sleeping during the testimony. At the time, the State's expert was testifying. Defense counsel never addressed the issue at all, perhaps for strategic reasons. The judge took immediate corrective measures, to which defense counsel neither objected nor asked to be supplemented. The judge did not mistakenly exercise his discretion.

7

## III.

Defendant contends Detective Kickey's testimony that he "recovered . . . some currency and some CDS as well," violated N.J.R.E. 404(b), which generally prohibits the admission of uncharged criminal conduct.[2] Because there was no objection, we review the admission of this evidence "for plain error, only reversing if the error is 'clearly capable of producing an unjust result.'" State v. Rose, 206 N.J. 141, 157 (2011) (quoting R. 2:10-2).

The State argues this evidence was admissible pursuant to the res gestae exception to the hearsay rule; however, for a decade, New Jersey has not recognized res gestae as an independent basis for admission of evidence. Id. at 182. We agree with defendant that permitting any evidence about the CDS seized at defendant's apartment was error, but there was no objection, and the reference was fleeting and never repeated. Given the overwhelming evidence supporting defendant's conviction, the error, when "quantitatively assessed in the context of other evidence . . . was harmless beyond a reasonable doubt." State v. Camacho, 218 N.J. 533, 552 (2014) (quoting Arizona v. Fulminante, 499 U.S. 279, 307–08 (1991)).

---

[2] Defendant was not indicted for possession of any controlled dangerous substance (CDS).

IV.

Lastly, defendant claims his sentence was excessive because "the sentencing court abused its discretion" by making "no findings with respect to aggravating factor nine, the need to deter," see N.J.S.A. 2C:44-1(a)(9), and by not "giv[ing] extreme weight" to "mitigating factor four," substantial grounds tending to excuse defendant's conduct. See N.J.S.A. 2C:44-1(b)(4). We review sentencing determinations with deference and will not substitute our judgment for that of the sentencing court. State v. Fuentes, 217 N.J. 57, 70 (2014) (citing State v. O'Donnell, 117 N.J. 210, 215 (1989)). As the Court has said:

> The appellate court must affirm the sentence unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [Ibid. (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364–65 (1984)).]

"If [a] court determines when it []sentences [a] defendant that aggravating factor nine applies, it should address both general and specific deterrence . . . ." Id. at 81 (citing N.J.S.A. 2C:44-1(a)(9)). As to aggravating factor nine, which the prosecutor requested the judge should find "to deter . . . defendant and

9

others," the judge stated: "And number nine, the need to deter this defendant and others from violating the law. I'm going to find that." Prior to that finding, the judge expressed his concern that the situation defendant caused could have rapidly turned worse, "[b]ecause we would have had a couple people dead and/or injured, including probably people going into the QuickChek . . . . [Defendant] might have been shot. Police officers might have been shot. There would have been people injured . . . during the chase."

Additionally, as to mitigating factor four, the judge found that defendant's case "would fit . . . that factor exactly" as "[defendant] did not establish the defense of insanity, nor . . . diminished capacity[, b]ut . . . everybody agrees he has a mental illness[,] PTSD." However, in rejecting defendant's request to be sentenced one degree lower pursuant to N.J.S.A. 2C:44-1(f)(2), "based on all of the foregoing, [he] [could not] find that the mitigating factors even outweigh the aggravating factors, let alone that they substantially outweigh. And I'm not clearly convinced in this matter."[3]

---

[3] When imposing a sentence for a first or second-degree crime, N.J.S.A. 2C:44-1(f)(2) permits the judge to sentence a defendant "to a term appropriate to a crime of one degree lower than that of the crime for which the defendant was convicted," if "the court is clearly convinced that the mitigating factors substantially outweigh the aggravating factors and where the interest of justice demands."

The judge did not violate sentencing guidelines, there was competent and credible evidence to support the aggravating and mitigating factors, and the sentence does not shock the judicial conscience.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3630-18