**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0155-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ISMAEL LORENZO, a/k/a
ISMAEL LORENZO, JR.,
JOEL LORENZO, and
ISAMEL LORENZO,

     Defendant-Appellant.

_____

Submitted March 20, 2024 – Decided July 2, 2024

Before Judges Currier and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Indictment No. 20-02-0155.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Stefan Van Jura, Assistant Deputy Public Defender, of counsel and on the brief).

Robert J. Carroll, Morris County Prosecutor, attorney for respondent (Tiffany M. Russo, Assistant Prosecutor, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

After representing himself at trial with stand-by counsel, defendant was convicted of third-degree possession with intent to distribute a controlled dangerous substance (CDS), N.J.S.A. 2C:35-5(a)(1) and (b)(11); third-degree financial facilitation of criminal activity, N.J.S.A. 2C:21-25(a); second-degree unlawful possession of a weapon while committing a CDS offense, N.J.S.A. 2C:39-4.1(a); and second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b)(1). After reviewing the contentions raised by counsel and defendant in a supplemental brief, in light of the facts and applicable principles of law, we affirm the convictions. However, because there is a discrepancy between the oral sentence imposed by the court and the sentence reflected in the Judgment of Conviction (JOC), we remand for the court to clarify its sentence and amend the JOC if necessary.

I.

Defendant was charged in an indictment with one count of fourth-degree possession of a (CDS) (count one); one count of third-degree possession with intent to distribute a CDS (count two); one count of third-degree financial facilitation of criminal activity (count three); one count of second-degree

A-0155-22

unlawful possession of a weapon while committing a CDS offense (count four); and one count of second-degree certain persons not to have weapons (count five).

We derive the facts from the evidence presented during hearings on numerous pre-trial motions and at the July 2022 trial.

A.

After several anonymous tips, law enforcement used a confidential informant (CI) to complete several controlled purchases of CDS from defendant. The CI bought marijuana from defendant on two occasions in November 2019. There were law enforcement officers present at the time. After each purchase, the CI turned over the suspected marijuana to the police, who logged it and stored it in a temporary evidence locker.

Thereafter, the court issued a knock and announce search warrant for defendant's premises. Investigators determined defendant's family resided in the main living area of a house and defendant lived in the basement, which was separately accessible.

Representatives of the Sheriff's Emergency Response Team (SERT) testified regarding their execution of the search warrant. The court and the jury also reviewed two security videos of the search. A SERT member explained he

3

was the breacher, responsible for "facilitat[ing] the opening" of the entry point—the door. Another individual was responsible for knocking on the door. The SERT member stated the "knocker" knocked on the door, and "[r]oughly [thirty] seconds" later, when there was no response, he was instructed to breach the door. A separate individual timed the interval after the knock. The SERT member viewed the security camera footage and stated it accurately depicted the approximately thirty seconds between the knock and announce and breach.

The SERT member testified the officers knocked and announced at "[t]he main breach point to the residence, the outside entry door." The security camera footage showed SERT arriving at the door at 5:59:01 a.m. and breaching the door at 5:59:31 a.m.

The officers accessed defendant's apartment through the rear basement door of the main residence. Detective Michael McMahon of the K-9 section of the Morris County Sheriff's Office testified he entered defendant's residence with his dog, Kai, and walked through each room. Kai's narcotics sniff resulted in five indications that led to the discovery of marijuana and paraphernalia: two indications on a chair and sofa in the living room, two indications on shelves in the closet, and one indication in a ceiling vent. During the search of the chair

A-0155-22

in the living room, officers discovered a loaded handgun. In subsequent testing, defendant's fingerprints were not found on the gun, magazine, or bullets.

Detective Supervisor Jimmy Atoche, in the Special Enforcement Unit of the Special Operations Division of the Morris County Prosecutor's office, testified that the door to the basement had a deadbolt, aftermarket brackets, and looked like it was fortified by a two-by-four piece of wood. Atoche stated the search of defendant's bedroom revealed green vegetative matter,[1] approximately twenty-one small Ziplock baggies inside a leather digital scale pouch, a scale described as often used in gram-sized weights, a cell phone, and a New Jersey vehicle registration renewal form bearing defendant's name.

A search of defendant's closet uncovered three stacks of money in rubber bands totaling $2,910 and a box with seven plastic baggies containing green vegetation. Atoche stated he noticed "a patchy paint job/sheetrock job" with a hole in the wall and peeled it back to find two cell phone boxes and a portable speaker box. One cell phone box had "10K" written on it and contained $10,000 in rubber-banded stacks of bills. A second cell phone box had "10K" written on

---

[1] This term was used by the court when law enforcement suspected the substance was marijuana.

A-0155-22

it and contained $9,900 in rubber-banded stacks of bills. The portable speaker box was larger and contained $20,000 in rubber-banded stacks of bills.

Near the second bedroom, there was an access panel that had been taken off the wall before the breach. In the panel, Atoche found green vegetation in a "standard sandwich Ziploc baggie" that was "full all the way."

A narcotics task force officer testified he searched behind a television in defendant's apartment and found two boxes of sandwich bags, a silver container containing eight individual sandwich bags of green vegetation, and "some blunt wraps." He also searched a desk in defendant's bedroom and saw defendant's driver's license. In a couch in the living room, the officer found six gallon-size Ziploc bags filled with individual Ziploc bags containing green vegetation in the area between the springs and the fabric bottom of the couch. He found a package of green vegetation in the arm of the couch inside a gray winter hat.

A forensic scientist in the Drug Unit of the New Jersey State Police, Office of Forensic Sciences tested the submitted samples of green vegetation and concluded it was marijuana.

The State also presented an expert in forensic examination of mobile devices who extracted text messages and photographs from defendant's cell phone. The court admitted two photographs into evidence that showed

6

defendant holding a bag of marijuana and two boxes of rubber-banded stacks of bills.

The expert read the jury text messages from an individual named KP beginning on December 4, 2019, and spanning multiple days, as well as text messages from an individual named Bam starting on November 11, 2019.

Sergeant James Bruno was admitted as an expert witness in narcotics, including coded language, drug dealer hierarchies, and packaging. He explained coded language is "a word, a term, or a phrase that's used to discuss or explain . . . an actual word." Bruno explained what street-, mid-, and high-level drug dealers were, described the organization and record keeping that drug dealers use for their money, and the types of packaging used by the different levels of dealers. He also testified about the range of prices and profits of different quantities of marijuana. Bruno described the terms associated with certain narcotics, and then interpreted some of the terms used in the text messages previously read to the jury.

Bruno stated the text messages revealed that Bam and KP were selling marijuana to defendant. He explained that higher-level dealers would sell to lower-level dealers and defendant was asking KP in the messages what the price per pound of marijuana was.

A-0155-22

In one of defendant's three pre-trial motions to suppress evidence, heard in September 2021, he stated the search was illegal because he possessed a California document that permitted him to possess and cultivate medical marijuana for medical purposes under the Compassionate Use Act of 1996, Cal. Health & Safety Code § 11362.5. He contended that because the affidavit for the search warrant was supported by the CI's observations and information regarding selling and possessing marijuana, the affidavit was invalid because he was not performing any illegal act. Therefore, the search was illegal, requiring the suppression of the items seized during it.

In response, the assistant prosecutor advised that defendant was not registered as a medical marijuana patient on the California cannabis website. Furthermore, defendant was a resident of New Jersey, not California. In addition, the State asserted any recent changes to New Jersey's marijuana laws did not apply to this December 2019 search during which officers recovered "nearly five pounds of marijuana," "distribution paraphernalia, multiple scales, $43,000 in cash, and a loaded handgun."

The court denied the motion, stating defendant's arguments concerned an affirmative defense—that he had a legitimate license applicable in New Jersey at the time of these events to possess and use medical marijuana. Defendant had

the burden of proof as to the affirmative defense. Therefore, the issue was left to the jury for its determination.

After the State rested its case, defendant raised the issue of the California medical marijuana card. The court advised defendant that if he discussed the card with the jury, the court would charge the jury with the applicable New Jersey law under the Compassionate Use Medical Marijuana Act (CUMMA), N.J.S.A. 24:6I-1 to -16.

Thereafter, defendant re-called Bruno who testified that during a search of defendant's car, he found a California marijuana card bearing defendant's name and a May 21, 2020 expiration date. Bruno further stated that defendant was a New Jersey resident in 2019, although he was not sure how long defendant had lived in this state.

On July 25, 2022, during the testimony of the prosecutor's office's records custodian, defendant requested a side bar, during which the following colloquy took place:

> [DEFENDANT]: Uh, one of the jurors are sleeping—
>
> THE COURT: I'm sorry?
>
> [DEFENDANT]: —one of the jurors are sleeping. I know that—I've indicated to [stand-by counsel]. Uh, so —

[STAND-BY COUNSEL]:  The person in the middle of the front row of the jury box.

THE COURT:  Well (indiscernible)—

[STAND-BY COUNSEL]:  Doing my best.

THE COURT:  —all right.  Thank you.

Pertinent to this appeal, the court included the following jury instruction in its charge:

> In this case the defendant has put forth evidence to assert that his marijuana possession was for medical necessity, specifically, by introducing a California marijuana card.  A medical marijuana card, if valid, is not an absolute defense to the charge in Count 2.  However, a card was allowed into evidence by this [c]ourt as it may reflect on the defendant's intent in possessing marijuana[,] if you find that he did, in fact, possess marijuana.
>
> For the defendant to establish a medical necessity for the legal possession of marijuana, he must present evidence that he is a qualified patient in New Jersey for the issuance of a valid [CUMMA] [c]ard . . . .
>
> A qualified patient is defined as a resident of the State who has been authorized for the medical use of cannabis by a healthcare practitioner.  To be considered a qualifying patient in New Jersey[,] the defendant must:
>
> 1. Register with the New Jersey Cannabis Regulatory Commission;
>
> 2. Supply the commission with:

10

A.    Documentation    of    the    healthcare practitioner's authorization for the patient or the medical use of cannabis;

B. Proof of the application or renewal fee;

C. The name, home address[,] and date of the patient, and date, uh, birth of the patient and any applicable designated caregiver;

[D.] The name, address[,] and telephone number of the patient's healthcare practitioner; and

E. Up to one alternate address of the patient for the delivery of medical cannabis.

. . . [I]f approved as a qualifying patient, the commission will register a registration card which includes the name, address[,] and date of birth of the patient, the name of any designated caregiver, the expiration date of the registration[,] and a photo identification of the patient.

If the defendant is classified as a qualifying patient and possesses a valid CUMMA card in another [s]tate other than New Jersey, and then subsequently moves to New Jersey, the other State CUMMA card is considered valid in New Jersey for a period of up to six months.

Upon relocating to New Jersey, the defendant must provide proof of registration in and a valid photo identification card issued by the other State or jurisdiction.  To legally obtain and possess medical cannabis during the six-month period after relocation to New Jersey, the defendant is required to provide written

instructions for medical cannabis dispensation issued by a New Jersey healthcare practitioner to a dispensary.

To retain a valid CUMMA card after six months of relocation to New Jersey, . . . the defendant must register as a qualifying patient in New Jersey as detailed above. No individual shall be authorized to acquire, possess, use or engage in other conduct in connection with medical cannabis in New Jersey pursuant to a medical cannabis registration from another [s]tate or jurisdiction for more than six months unless the individual registers with the New Jersey CUMMA Commission as a qualifying patient.

. . . .

A qualifying patient may be dispensed a maximum of [thirty-six] ounces in one year. An exception to this maximum amount exists if a patient is terminally ill or is currently receiving hospice care through a licensed hospice. A qualifying patient that meets this exception may be dispensed an . . . unlimited amount of medical cannabis. Qualifying patients that do not meet this exception may petition the commission for an exemption of the monthly limits and such petition can be approved if the commission finds an exemption is necessary to meet the patient's treatment needs.

Prior to dispensation to a qualifying patient, every batch of medical cannabis is tested by a laboratory. A written report summarizing the results of the testing shall be included in any packaging materials for medical cannabis. A stamp will be affixed to each package of medical cannabis prior to delivery to the qualifying patient.

12

To find that the defendant possessed the marijuana for medical necessity, as . . . defendant has proffered, you must find that he is, first, a qualified patient. . . . .

[1.] [T]he defendant must register with the New Jersey Cannabis Regulatory Commission; and

2. Supply the [C]ommission with:

A. Documentation of the healthcare practitioner's authorization for the patient for the medical use of cannabis;

B. Proof of the application or renewal fee;

C. The name, . . . home address, and date of birth of the patient and any applicable designated caregiver;

[D.] The name, address, telephone number of the patient's healthcare practitioner; [and]

[E.] Up to one alternate . . . address for the patient for delivery of the medical cannabis.

If approved as a qualifying patient, the [C]ommission will register a registration card which includes the name, address[,] and date of birth of the patient, the name of a designated caregiver, the expiration date of the registration[,] and a photo identification of the patient.

If the defendant has demonstrated that he is a qualified patient, the following requirements must also be met to validly possess a CUMMA card:

13

Possess a valid [CUMMA] registration card issued by the New Jersey Cannabis . . . Regulatory Commission;

Possess no more than [a] maximum year's . . . medicinal marijuana supply, i.e., [thirty-six] ounces per year, . . . possessing a valid CUMMA card unless the defendant meets the exception for . . . possessing over the maximum year's medical marijuana supply for being terminally ill or . . . presently receiving hospice care;

Provide[] proof of written reports that validate the medical marijuana the defendant possesses [w]as tested by a laboratory prior to dispensation; and

Provide[] proof that the marijuana possessed by the defendant was dispensed to him, was packaged with a stamp signifying that the marijuana [w]as medicinal marijuana.

It is for you, the jury, as triers of the fact to determine whether the defendant has met the requirements under New Jersey law for the possession of a valid New Jersey CUMMA card or a valid out-of-state card.

If you find the defendant possessed a valid medical marijuana card, you may use that evidence along with the other evidence presented to determine the defendant's intent in possessing the marijuana purportedly found in his residence.

If you believe that the defendant has not presented sufficient evidence of medical necessity for the possession of medical marijuana, then you may disregard the evidence.

14

After the court concluded the jury instructions, it inquired at sidebar whether there were any objections to the charge. The State and defendant's stand-by counsel both replied "[n]o." Although defendant was present during the sidebar conference, the transcript does not reflect any response to the question.

As stated, defendant was found guilty of possession of marijuana with intent to distribute, financial facilitation of a criminal act, and possession of a firearm while committing a CDS offense. After a separate trial, defendant was found guilty of a certain persons not to have weapons offense.

B.

Defendant was sentenced on August 25, 2022. Although the court found defendant met the criteria of a persistent offender under N.J.S.A. 2C:44-3(a), it denied the State's motion, because there was a gap between defendant's 2008, 2013, and current convictions, and defendant's present convictions required consecutive sentences, meaning, he "fac[ed] a significant sentence."

The court found aggravating factors N.J.S.A. 2C:44-1(a)(3), the risk of re-offending; (a)(6), the defendant's prior criminal record; and (a)(9), the need for deterrence. The court did not find any mitigating factors. As a result, it found the aggravating factors outweighed the mitigating factors.

On count two, third-degree possession of marijuana with intent to distribute, the court sentenced defendant to five years in prison with no period of parole ineligibility. On count three, third-degree financial facilitation, the court sentenced defendant to a five-year sentence to run consecutively to the sentence imposed under count two. On count four, second-degree possession of a firearm during a CDS offense, the court imposed a sentence of ten years in prison, with a five-year period of parole ineligibility, to run consecutively to the sentence under count two.

On count five, second-degree certain persons not to have weapons, the court sentenced defendant to ten years to run concurrently to the sentence imposed for count four, with a five-year period of parole ineligibility. The court stated the overall sentence was twenty years with a five-year parole ineligibility period.

The JOC reflected defendant was guilty of counts two, three, four, and five. The JOC sentenced defendant to five years on count two; five years on count three, to run consecutive to count two; ten years with a five-year parole ineligibility period to run consecutive to counts two and three on count four; and ten years with a five-year parole ineligibility period to run concurrently to the sentences imposed on counts two, three, and four on count five.

A-0155-22

II.

On appeal, in a counselled brief, defendant raises the following arguments for our consideration:

> POINT I
> DEFENDANT WAS DENIED HIS RIGHTS TO DUE PROCESS AND TO PRESENT A DEFENSE BY A JURY INSTRUCTION THAT UNFAIRLY EVISCERATED HIS DEFENSE THAT HE POSSESSED THE MARIJUANA FOR PERSONAL USE, NOT WITH THE INTENT TO DISTRIBUTE.
>
> POINT II
> THE FAILURE OF THE TRIAL COURT TO VOIR DIRE A SLEEPING JUROR DEPRIVED DEFENDANT OF HIS RIGHT TO A FAIR AND IMPARTIAL JURY, AND REQUIRES THE REVERSAL OF THE CONVICTIONS.
>
> POINT III
> THE MATTER SHOULD BE REMANDED FOR CORRECTION OF THE JUDGMENT OF CONVICTION TO REFLECT THE ORAL PRONOUNCEMENT OF SENTENCE OF A FIFTEEN-YEAR TERM WITH FIVE YEARS OF PAROLE INELIGIBILITY, NOT A TWENTY-YEAR TERM WITH FIVE YEARS OF PAROLE INELIGIBILITY

In a pro se supplemental brief, defendant presented the following nineteen points for our consideration:

> POINT 1 Conflict of Interest
>
> POINT 2 Affiant[']s Affidavit

17

POINT 3 Knock-and-Announce Search Warrant Violation

POINT 4 Defendant[']s Medical Marijuana Card

POINT 5 Probable Cause[] Was Solely Based on the Two Alleged CI Buys

POINT 6 Officer Confirms the CI Made a Phone Call

POINT 7 CDW

POINT 8 Lead Det[ective] D[anny] Corrales Fabricates a Phone [Number] That Does Not Belong to [t]he Defendant

POINT 9 Det. Corrales [T]estifies [T]hat [B]oth CI Purchases [W]ere [S]ent to the Lab

POINT 10 Det. Corrales Commits Perjury

POINT 11 Probable Cause [W]as [N]ot Established

POINT 12 Omnibus Opinion Filed on 11/04/2021

POINT 13 Rules & Laws That Were Made [u]p [d]uring Trial

POINT 14 Judge's Tactics [T]owards Defense

POINT 15 Prosecutor Erin Callahan [U]ses May 2019 Surveillance Testimony

POINT 16 Jurors & Jury Selection

POINT 17 Judge Stephen J. Taylor on Sentencing Day

POINT 18 Cross Examination of the Witnesses

18 <span>A-0155-22</span>

POINT [19] CI [W]as [N]ot Present at Trial

A.

We begin with the counselled arguments. Defendant contends he introduced his California medical marijuana card to establish he could permissibly possess large quantities of marijuana for personal use. His intent was to disprove the State's charge of distribution.

Neither stand-by counsel nor defendant objected to the jury charge, even when questioned directly by the court. Therefore, we review for plain error. We will only reverse if the error "is of such a nature as to have been clearly capable of producing an unjust result." R. 2:10-2.

Prior to defendant eliciting and presenting information about the California card during his direct case, the court cautioned him it would instruct the jury as to the particular requirements under New Jersey law to use an out-of-state medical marijuana card. The court also stated it would advise the jury the card was "not necessarily a defense to possession with intent to distribute, that it was introduced as it may reflect on the defendant's intent only."

Therefore, the court charged the jury exactly what defendant sought to use the card for during trial: to demonstrate he did not have an intent to distribute marijuana because he had a valid marijuana card. The judge's instructions were

appropriate given that many of the jurors may have been unfamiliar with CUMMA or what was required to have a valid medical marijuana card in New Jersey. See State v. Butler, 27 N.J. 560, 594-95 (1958). The instructions detailed what the law required for a valid marijuana card and how a resident with an out-of-state marijuana card could transfer their license to New Jersey.

As required, the court's instruction on this issue "explain[ed] to the jury in an understandable fashion its function in relation to the legal issues involved." State v. Green, 86 N.J. 281, 287 (1981). Defendant has not shown any "legal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." State v. Hock, 54 N.J. 526, 538 (1969).

We turn to defendant's allegations regarding the sleeping juror. He contends the court should have placed its observations of the juror on the record or questioned the juror when it was alerted to the situation. As stated, during the testimony of a chain-of-custody witness, defendant informed the court he thought a juror was sleeping.

In State v. Mohammed, 226 N.J. 71, 87-90 (2016), the Court detailed the appropriate procedure a judge should follow when there is an allegation of an

inattentive juror. The Court explained that when a party alerts the judge of an inattentive juror, the judge should provide their own personal observations about the juror's attentiveness on the record. Id. at 89. If the judge did not observe the behavior, they should voir dire the juror to determine if they were inattentive. Ibid. If the judge determines the juror was inattentive, but it was "an inconsequential part of the trial," the judge has "broad discretion to determine the corrective action that must be taken." Ibid. If the judge finds the juror was inattentive, but it was "a consequential part of the trial," the judge must provide the information the juror missed or if necessary, excuse the juror. Id. at 89-90.

In reviewing the judge's actions, we apply a harmful error standard and consider whether the error was "clearly capable of producing an unjust result." Id. at 89 (quoting R. 2:10-2). From our reading of the record, it appears the court did not observe the inattentive juror. Therefore, under Mohammed, the court should have examined the juror to determine what they missed, although no one asked the court to do so. Ibid.

Our review of the record also reveals this was not a critical portion of the evidence. Defendant only asked the witness one question on cross-examination, whether she checked evidence in and out. Furthermore, other witnesses also testified regarding the chain of custody of the evidence and were subject to

21

defendant's cross-examination. Therefore, it was harmless error not to further inquire of the juror their level of attentiveness.

Defendant's final contention, through counsel, concerns his sentence. He contends the JOC does not align with the court's oral sentence, regarding the running of consecutive terms.

The court orally imposed a five-year sentence on count two, a consecutive five-year sentence on count three, a term of ten-years on count four that was to run consecutive to count two, and a ten-year term on count five to run concurrently to the sentence on count four. The oral sentence totaled fifteen years. However, the court stated "the overall sentence " is twenty years with a mandatory five-year period of parole ineligibility. The JOC states the sentence on count four runs consecutively to counts two <u>and three</u>, which results in a total sentence of twenty years.

There is no discrepancy between the total sentence announced by the court and the JOC. But there is a question of the court's intent regarding the consecutive running of the sentences. Therefore, we find it appropriate to remand solely for the court to clarify its intent. <u>See</u> <u>State v. Murray</u>, 338 N.J. Super. 80, 91 (App. Div. 2001).

## B.

We turn then to defendant's contentions in his pro se supplemental brief. In Points one, two, three, and eleven, defendant raises issues regarding the affidavit submitted to support the application for a search warrant and the lack of probable cause for the issuance of the warrant. Defendant also asserts the search warrant was not executed during "standard business hours" and SERT did not wait the required time before breaching the door.

Defendant raised these issues in his pre-trial motions and the court heard extensive argument. On February 12, 2021, the court considered and denied defendant's motion to suppress evidence in which he alleged there was a lack of probable cause in the affidavit used to secure the search warrant and a failure to adhere to the knock and announce rule.

In a comprehensive written opinion, the court found there was probable cause for the search warrant because of the tips received from the CI, the surveillance verified the CI's information, and the CI's controlled purchases of marijuana from defendant. After detailing the investigation and corroboration of the CI's information, the court concluded "there was ample evidence set forth in the four corners of the affidavit" to support a finding of probable cause.

The court also found the officers' actions in executing the search warrant "were objectively reasonable under all the circumstances." It explained that the officers were trained and briefed regarding the execution of search warrants, and the officer's testimony about the events "was forthright, direct and credible in all regards."

Our review of a motion to suppress is limited. State v. Ahmad, 246 N.J. 592, 609 (2021). The "trial court's factual findings in support of granting or denying a motion to suppress must be upheld when '"those findings are supported by sufficient credible evidence in the record."'" State v. A.M., 237 N.J. 384, 395 (2019) (quoting State v. S.S., 229 N.J. 360, 374 (2017)). Similarly, our review of a search warrant is limited. State v. Chippero, 201 N.J. 14, 32-33 (2009). We "'pay substantial deference' to judicial findings of probable cause in search warrant applications." State v. Andrews, 243 N.J. 447, 464 (2020) (quoting State v. Kasabucki, 52 N.J. 110, 117 (1968)).

In addition to evidence regarding the controlled buys, the judge issued the search warrant as supported by the officer's affidavit, which was based on his surveillance of defendant and defendant's residence, anonymous tips, and information from the CI. We are satisfied, in considering the totality of the

circumstances, that the court did not err in finding there was probable cause for the issuance of the search warrant.

In addressing defendant's arguments regarding the knock and announce procedure, the court noted the security camera footage showed the officers complied with the "reasonable wait time" standard and that the officers knocked twice, "announced 'police search warrant' multiple times," waited about thirty seconds, and then breached the door. While acknowledging that the officers may not have waited exactly thirty seconds, the court explained the "reasonable wait time" standard is measured by the time it takes an individual to dispose of drugs, not how long it takes them to reach the door.

The court found no merit in defendant's argument that the officers violated the knock and announce rule when they knocked on the main door to the residence, but not the door to his apartment. The court stated the officers did not have to knock and announce on every door they encounter, but only the external door to the residence. There was no evidence that the basement area defendant occupied had multiple residences.

Before this court, defendant reiterates the arguments previously raised before the trial court. We discern no reason to disturb the court's ruling denying

the suppression motion as defendant has presented no evidence that law enforcement did not comply with the knock and announce rule.

Points one, four, twelve, thirteen, fourteen, fifteen and seventeen set forth defendant's allegations regarding the judge's misconduct and impartiality. We need only briefly address these contentions as we find them lacking in merit.

In Point one, defendant contends the judge had a conflict of interest and should not have considered the pretrial motions or presided over the trial because he issued the search warrant. In addressing this argument, the court cited to Rule 1:12-1, finding there were no grounds to recuse himself because he had issued the search warrant. The judge noted this court's holding in State v. Smith, 113 N.J. Super. 120, 137-38 (App. Div. 1971), that issuing a warrant is ex parte and Rule 1:12-1(d) does not prevent a judge from hearing a case because they have made a ruling on an issue in the pending action.

Point four concerns an evidential issue addressed by the court during trial. We see no abuse of discretion in denying defendant's request to present a discrete piece of evidence. Points twelve, thirteen, fourteen and seventeen allege the court showed bias and prejudice against him. Our careful review of the record shows no support for defendant's contentions. To the contrary, the court was patient with defendant, providing guidance on the law and manner of

26

presentation and extending great leeway to him in his self-representation. The court permitted defendant to fully and fairly participate in the trial.

In Point fifteen, defendant asserts the State used surveillance testimony that was barred by a prior court order, amounting to prosecutorial misconduct. The order defendant relies on to support this argument is not contained within the record. And we have discerned no evidence in the record that "was so egregious that it deprived . . . defendant of a fair trial." State v. Frost, 158 N.J. 76, 83 (1999).

In Points six, eight, nine, ten and eighteen, defendant alleges certain officers perjured themselves in their testimony. While there may have been inconsistencies in some witnesses' testimony, there is no evidence to support the allegations of perjury. See N.J.S.A. 2C:28-1.

In Point nineteen, defendant argues he attempted but was not allowed to call the CI to testify, which resulted in a violation of his right to confront his accuser. Defendant provides no citation to the record to support his argument nor to any court ruling on the issue. Therefore, we cannot properly review the contention.

Nevertheless, we note the following. N.J.R.E. 516 provides that

> [a] witness has a privilege to refuse to disclose the identity of a person who has furnished information

purporting to disclose a violation of a provision of the laws of this State . . . to a representative of the State . . . , unless the judge finds that (a) the identity of the person furnishing the information has already been otherwise disclosed or (b) disclosure of [the person's] identity is essential to assure a fair determination of the issues.

In State v. Milligan, the Court instructed that when considering whether to disclose the identity of a witness, the trial court should weigh "the public interest in protecting the flow of information against the individual's right to prepare his defense." 71 N.J. 373, 384 (1976) (quoting Roviaro v. United States, 353 U.S. 53, 62 (1957)).

Article I, Paragraph 10 of the New Jersey Constitution permits an accused individual "to be confronted with the witnesses against him." As a result, a court is not allowed to "admit[] testimony of a witness who directly or indirectly provides information derived from a non-testifying witness that incriminates a defendant at trial." State v. Weaver, 219 N.J. 131, 151 (2014).

In his appellate brief, defendant has not presented any evidence that the CI's testimony was necessary to the presentation of his case or that the CI's identity should have been disclosed under N.J.R.E. 516. In addition, defendant has not presented any evidence that the trial court admitted incriminating testimony of a non-testifying witness. See Weaver, 219 N.J. at 151. The

testimony regarding the CI's controlled buys was only used in the affidavit supporting the application for a search warrant, not as evidence before the jury.

To the extent we have not commented on them specifically, all other points defendant raises on appeal lack "sufficient merit to warrant discussion in a written opinion." R. 2:11-3(e)(2).

Affirmed. We remand solely for the trial court to conduct proceedings regarding defendant's sentence as discussed above. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0155-22